## Case No. 14,985.

### UNITED STATES v. DOSS et al.

[11 Am. Law Reg. (N. S.) 320.]

District Court, W. D. Missouri. 1872.

**OBSTRUCTING PROCESS OF UNITED STATES — RELEASING PRISONER ON HABEAS CORPUS.**

[A judge of a state court who, in pursuance of a conspiracy and in bad faith, releases on habeas corpus, without any ground therefor, a prisoner committed on an examination by a United States commissioner, to answer an indictment if found against him, is, with those who conspire with him for such purpose, guilty of obstructing process of the United States.]

[This was an indictment against S. P. Doss and others for obstructing a United States officer in the discharge of his duty.]

James S. Botsford, Dist. Atty., and H. B. Johnson, for the United States.

Ewing & Smith and Mr. Philips, for defendants.

KREKEL, District Judge (charging jury). The first count of the indictment charges that Doss, McAfee, Snow and Wray, did knowingly and wilfully obstruct, resist, and oppose McConoughey, United States deputy marshal, in serving, and while attempting to serve and execute a warrant of commitment on Samuel Snow. The second count charges the same defendants with rescuing said Samuel Snow by force from said marshal, who held him under warrant of commitment. These charges are based upon an act of congress, which provides: "If any person shall knowingly or wilfully obstruct, resist, or oppose any officer of the United States in serving or attempting to serve or execute any measure, process or warrant, or any rule or order of any of the courts of the United States, or any other legal or judicial process whatever. * * * Every person so knowingly or wilfully offending in the premises, shall, on conviction, be imprisoned not exceeding twelve months, and fined not exceeding three hundred dollars." "Or if any person or persons shall by force set at liberty or rescue any person committed for, or convicted of, any offence against the United States, every person so offending shall, on conviction, be fined not exceeding five hundred dollars, and imprisoned not exceeding one year."

It appears that one Samuel Snow was arrested on a warrant issued by United States Commissioner Birdseye, upon affidavit filed by one Morris, charging said Snow with hav-

ing in his possession for the purpose of passing as genuine certain counterfeit obligations of the United States. Snow was brought before the commissioner on the 20th day of September, 1871, who continued the hearing of the case to the 30th of the same month. Upon an examination then had, said Snow was bound over for his appearance before the district court for the Western district of Missouri, to answer an indictment if found. Snow gave bail in the sum of one thousand dollars, with two of the present defendants, Wray and David Snow, the latter the father of Samuel Snow, as sureties. Afterwards, under an act of congress, which provides: "That any party charged with a criminal offence and admitted to bail, may in vacation be arrested by his bail and delivered to the marshal or his deputy before any judge or other officer having power to commit for such an offence, and, at the request of such bail, the judge or other officer shall recommit the party arrested to the custody of the United States marshal; and he shall hold him until discharged in due course of law." Samuel Snow was surrendered by his sureties to the commissioner, Birdseye, who delivered him to the deputy marshal, and failing to give bond was committed by the deputy marshal to the jail of Vernon county for safe keeping, until he could be removed to the county jail of St. Louis county. On the day of the surrendering of said Samuel Snow by his sureties, a writ of habeas corpus was sued out before the probate judge of Vernon county, the defendant McAfee, on petition of the said Samuel Snow, under the statute of Missouri, which provides that the applicant for the benefit of the writ shall state under oath in substance, by whom the party for whom relief is prayed is imprisoned or restrained of his liberty, and the place where, naming the parties, all the facts concerning the imprisonment or restraint, and the true cause thereof, and if the imprisonment is alleged to be illegal, in what the illegality consists. Samuel Snow, in his petition for the benefit of the writ of habeas corpus, says that he was arrested by one McConoughey upon some process, or pretended process (charging him with an attempt to pass counterfeit money), issued by one Birdseye, and that he is now restrained of his liberty at the county of Vernon for no crime or criminal matter. The law required him to set out all the facts concerning the imprisonment and the true cause thereof. You will observe how carefully this petition, in spite of the provision of the statute quoted, seeks to withhold the facts, well known to the petitioner, that a United States commissioner, Birdseye, had acted in his case, and that he was in the custody of the United States deputy marshal, McConoughey. The evidence as to the time at which the affidavit annexed to the petition was sworn to, and also how he accounts for his failing to comply with another requirement of the statutes, that if he was restrained or confined by virtue of any warrant, order, or process, a copy thereof must accompany the petition, is before you. Had this part of the statute law been complied with, the judge who issued the writ of habeas corpus could at once have seen what kind of case he was dealing with, and he might well have refused the writ, under that clause of the Missouri statutes providing that if it appears that the party cannot be discharged or otherwise relieved, the writ shall be denied. All these plain provisions of the statutes were staring those engaged in obtaining the benefits of the writ for Samuel Snow in the face at the time of the application. When the return to the writ was made—so full and pointed—it should have arrested attention, especially as the jurisdictional question fully appeared. The return fully sets out all the facts and circumstances of the arrest, the examination, the holding to bail, the surrender of bail, and the recommitment, the cause of the restraint by a United States commissioner (a duly authorized judicial officer of the United States). It was presented by the law officer of the government.

I shall not stop to examine as to what has been said in the discussion of the adjudicated cases as to whether a United States marshal, holding a prisoner under due process of the United States—as Snow was held—is bound to produce the body of the person so detained or imprisoned, together with the time and cause of his imprisonment and detention, as required by the Missouri statutes and the writ, for whatever the law may be the good understanding that should ever exist between the state and national government and its judiciaries should govern rather than the law. The officers of the national government acted properly and in the true spirit of the law in producing the body of Samuel Snow, and the cause of his restraint and detention, thus putting the probate judge fully in possession of the case. When that was done, and the return not denied, for the paper filed the next day can scarcely be called a denial, the probate judge should have abstained from longer interfering with the case. His acts thereafter were illegal. The Missouri statute, in its 35th section of the habeas corpus act, provides, that if it appear that the prisoner is in custody by virtue of process from any court legally constituted, or issued by any officer in the course of judicial proceeding before him, such prisoner can only be discharged on one of the following cases: —First. Where the jurisdiction of such court or officer has been exceeded either as to matter, place, sum, or person. Second. Where, though the original imprisonment was lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to be discharged. Third. Where the process is defective in some matter of substance required by law, rendering such process void. Fourth. Where the process, though in proper form, has been issued

in a case, or under circumstances not allowed by law. Fifth. Where the process, though in proper form, has been issued or executed by a person who is not authorized by law to issue or execute the same, or where the person having the custody of such prisoner under such process is not the person empowered by law to detain him. Sixth. Where the process is not authorized by any judgment, order or decree, nor by any provision of law.

It most manifestly appeared that the process of the United States commissioner was issued by an officer in the course of judicial proceedings before him. This has not in any manner been questioned. By the most liberal construction that can be given to the six classes of cases under which a prisoner may be discharged, not one can be found within which the case before Judge McAfee could be brought. These provisions plainly repudiate the discharge of the prisoner. Such a law as the one quoted, and the enforcement thereof, is an absolute necessity, for where would the interference stop if judicial officers, who had the right to issue the writ of habeas corpus, had nothing to guide them but their own discretion? Every jail in the land would be emptied if it was not for such or similar provisions of law. limiting and restraining the exercise of judicial discretion.

It is asked, is it supposable that a United States commissioner can take a citizen of a state, and he have no redress through its own legal tribunals? Under our system we are citizens of the general government first, and as such we owe paramount allegiance to it. It is a mistake to suppose that the national government operates on citizens of a state. It operates on its own citizens, and enforces its laws upon them as such. But this danger of oppression from the national government is more imaginary than real. Thus, for instance, there are not less than three judges who could have fully examined into and corrected any error which the United States commissioner might have committed. The judges of the Eastern and Western districts, in their capacity as circuit court judges, could have acted besides the circuit court judge proper. Missouri is most favorably situated in respect to the national judiciary. If the people of one district should from any cause distrust the judge of their own district, they need only apply to the other, who as circuit judge has jurisdiction over the whole state. Reference has been made to the concurrent jurisdiction in many cases exercised by the federal and state judiciary, and the case in which the present proceeding had its origin is one of that class. The debasing of the currency of the country is an evil which affects all alike, citizens of the state as well as of the United States. Is it strange that congress and state legislatures should be alike willing to provide a remedy? In applying such remedy no conflict can ever arise, for the well-known rule is, to leave jurisdiction to the tribunal first obtaining it. Had Samuel Snow in this case been arrested by state authority, no one would ever have thought of disturbing or interfering with the rightfully-acquired jurisdiction. To deduce from these concessions the right of the state judiciary to interfere with first and rightfully-obtained jurisdiction of the United States, would be the reversing of both the intent and legal rule.

Let us now return to the real question in issue: How far can a judicial officer of a state justify his interference in the judicial proceedings of the United States? As a matter of course, if Judge McAfee, in combination with others, misused his position and office by making use of the law and his power for the purpose of accomplishing an improper release of Samuel Snow, and you are fully satisfied of that fact, defendant McAfee, and those who acted with him, are guilty of having obstructed the process under the first count of the indictment. If, on the other hand, you should come to the conclusion that there was no combination between all of these defendants, but that there was such a combination between two or more of them, then you should find as many as entered into the combination (not less than two) guilty, under the first count of the indictment. If you shall find that no conspiracy or combination for the purpose stated existed among any of the defendants, you will next inquire, whether any, and if so, how many are guilty of having obstructed the process of the United States under the first count of the indictment, or by force rescued under the second count. In considering the acts of the probate judge you are instructed that the law is that if he acted bona fide, that is, in good faith, he is not answerable, and you should find him not guilty. He was bound to act on the application made to him for the writ of habeas corpus, and if he erred in granting the writ, or in the proceedings had before him under it, for that error he is not responsible in these proceedings. In a late decision as to the custody of a prisoner pending the hearing of a writ of habeas corpus, the supreme court of the United States, in Barth v. Clise [12 Wall. (79 U. S.) 400], held, that by the common law upon the return of a writ of habeas corpus, and the production of the body of the party suing it out, the authority under which the original commitment took place is superseded. After that time, and until the case is finally disposed of, the safe-keeping of the prisoner is entirely under the control and direction of the court to which the return is made; that the prisoner is detained not under the original commitment, but under the authority of the writ of habeas corpus; that pending hearing he may be bailed de die in diem, or be remanded to the jail whence he came, or be committed to any other suitable place of confinement under the control of the court.

It would seem that, under the entire control thus given to the court over the prisoner,

the judge may direct any person to take charge of, and hold the prisoner until the case is finally disposed of. The person thus holding the prisoner must of necessity be able to justify for the simple act of holding under the order of the court, and if you shall find that Wray did nothing else than hold the prisoner under order of the court, for that act alone he should not be found guilty of obstructing the process of the United States. But this ruling of the supreme court of the United States also affects the acts of the other defendants. However much the allusion to wire-pulling by Doss, or that to force by Wight or the reference to the power behind the throne of the district attorney, may lead you to understand what was transpiring in that court at a time when men of cool, dispassionate judgment were sadly needed, yet the decision referred to relieves the judge, Doss and Wight of having obstructed process, for if the prisoner was in the custody of the court they could not be guilty of obstructing process of the United States. The case then comes back to the first proposition, was there a conspiracy or combination of two or more of these defendants to improperly release Samuel Snow from his imprisonment, thus obstructing the process of the United States. If you are satisfied there was, you will find so many as entered into such a conspiracy and combination guilty under the first count of the indictment.

This case will point out the caution with which those in authority should proceed. The steps taken could not possibly redound to the benefit of Samuel Snow, for the discharge obtained could not protect him against an examination into his offence before the grand jury. Instead of having him to deal with, if no interference had occurred, we are now engaged in examining into the case growing out of the interference. It seems incomprehensible why a jealousy should exist between the state and the national government, and especially between the judiciaries of the two. Identity of interests, affecting the individual in both capacities as a citizen of a state and the general government alike, when rightly understood, can leave no room for differences. The judiciary, solely interested in the faithful execution of the laws, should hesitate to interfere with each other, because of the conflict which must necessarily follow derogatory to both.

You, gentlemen of the jury, to whom this case is about to be submitted for final action, will enter upon the consideration thereof. I am sure, in that true spirit which recognises its obligations to both governments, and above all, to that spirit of justice and of right on which all government and laws securely rest.

The jury returned a verdict, finding McAfee (the judge who issued the writ) and Doss (the attorney of the prisoner suing out the writ) guilty, and Snow and Wray not guilty.